STATE OF MONTANA, Plaintiff and Respondent, v. MIKE MACIEL, Defendant and Appellant.

No. 9600.

Submitted June 21, 1956. Decided January 5, 1957.

305 Pac. (2d) 335.

Mr. R. C. Letcher and Mr. Ralph L. Herriott, Billings, for Appellant.

Mr .Arnold H. Olsen, Atty. Gen., Mr. Emmet T. Walsh, Asst. Atty. Gen., Mr. Arnold A. Berger, Mr. John J. Cavan, Jr., County Attys., Mr. Peder J. Moe, Jr., Deputy County Atty., Billings, for respondent.

Mr. Herriott, Mr. Moe and Mr. Walsh argued orally.

MR. JUSTICE ANGSTMAN:

This is an appeal by the defendant from a judgment of conviction of the crime of grand larceny and from an order denying his motion for a new trial.

The crime was alleged to have been committed on or about the 6th day of February, 1955. The property alleged to have been stolen was cash in the sum of $4,700, the property of Dorothy Fava. The evidence on most issues was conflicting.

Viewed in the light most favorable to the state, it shows the following facts: On the evening of Saturday, February 5, 1955, Mrs. Dorothy Fava had the sum of $4,700 in United States currency pinned to her underpants. There were three one-thousand dollar bills and the rest in bills of smaller denominations. She went to a tavern called the Mexican Star

in Billings, operated by a woman named Maria Solis. Before entering this tavern she had been in other taverns in Billings and drank some beer. She claims that while at the Mexican Star tavern she was given some coffee which was drugged and as a consequence she became sick and was rendered semi-conscious''. While in that condition Maria Solis went with her to the ladies' rest room and there learned of the money on her person. Upon returning to the barroom from the rest room Maria Solis talked with defendant and one Antonio Gascar, informing them of the fact that she had this money on her person. There is conflict in the evidence as to just what was then said but it is undisputed that defendant took Dorothy Fava out of the tavern and placed her in a car then being driven by Baudelio Nava. Others then in the car or entering it before it left the tavern were Antonio Gascar, defendant, Baudelio Nava, David Nava, Felix Romera and Raymond Chavez. The car was then driven in a southerly direction and finally stopped behind the sugar factory in the City of Billings. The underpants of Dorothy Fava were removed either by Gascar or defendant or by both of them and thrown from the car. The car stopped for only a few minutes and some of the occupants got out and the rest remained in the car. They then all resumed their respective positions in the car and started back toward the business section of Billings. When the car reached Minnesota Avenue all of the occupants of the car got out save Baudelio Nava, Dorothy Fava and defendant. Defendant then drove the car south on Twenty-sixth Street and got it stalled in a snowdrift near the Taft school. While in the act of getting the car out of the snowdrift with the help of others, they were seen by the police officers of Billings and the next day the police learned of the loss of the money by Mrs. Fava and defendant was placed under arrest, along with some others of the group.

The principal evidence connecting defendant with the theft consists of his own admissions or confessions to the police officers. His statement to the police officers was that while in the

Mexican Star Maria Solis, after taking Mrs. Fava to the toilet, came to defendant and said, ''Why don't you take Dorothy Fava home? She's got a lot of money on her hidden underneath her clothing.'' And Maria Solis immediately thereafter told Tony Gascar that Mrs. Fava had a lot of money on her and it would be easy to get and that defendant was in on the deal and was to get some of the money.

Defendant further told the police officers that prosecutrix was taken in Baudelio Nava's car to a spot behind the sugar factory where ''Tony took the panties off of Mrs. Fava and throwed them out of the window''; that thereafter the defendant stated to the police that after the car stopped Tony Gascar ran back to the panties and he saw Gascar ''fooling around with a cloth or clothing, and figured he was getting his money.'' There was evidence that defendant was one who took the prosecutrix' pants off and in fact defendant himself so testified but said it was done on the way home from the sugar factory and not at the sugar factory.

The first contention made by the defendant is that the evidence is insufficient to show or to prove that defendant took, stole or carried away from the person of Dorothy Fava the currency as alleged in the information. While the statute defines larceny as the taking of property from the person of another, R.C.M. 1947, section 94-2704, yet it is sufficient to show that he aided or abetted in the commission of the crime, R.C.M. 1947, section 94-6423, because all persons concerned in the commission of a crime are principals under section 94-204.

There is ample evidence, direct and circumstantial, if be-
[1] by the jury and if admissible, a point we will hereafter discuss, to sustain the verdict of guilty.

It is next contended by defendant that the statement made by the defendant to the police officers and testified to by the latter was inadmissible. In support of this contention defendant argues that when the statement was made the officers promised that, if made, they would turn him loose. Defendant testified to that effect, but this was flatly denied by the

officers and they testified in substance that the defendant before making the statement was fully warned of his constitutional rights and that the statement need not be made by him, and that if the statement were made it could be used for or agianst him. They further testified that defendant was advised of his right to counsel and that the statement was made freely and voluntarily and without any threats of punishment or promise of reward of any kind. The court did not commit error in receiving the testimony of the police officers as to what defendant told them with respect to the crime, and this regardless of whether the statements be considered as confessions or merely as admissions against interest as those terms have been defined in State v. Guie, 56 Mont. 485, 186 Pac. 329; State v. Stevens, 60 Mont. 390, 199 Pac. 256; State v. Walsh, 72 Mont. 110, 232 Pac. 194; State v. Dixson, 80 Mont. 181, 260 Pac. 138; State v. Foot, 100 Mont. 33, 48 Pac. (2d) 113, and other cases.

Nor is the statement rendered inadmissible because defendant was not under arrest at the time. This case differs from that of State v. Allison, 116 Mont. 352, 153 Pac. (2d) 141, for in that case the statements complained of were given at a coroner's inquest and defendant had not been warned of his constitutional rights before testifying. Here he was so advised according to the police officers and the statements were not made at an inquest under the mistaken belief that he had to give them.

It is true that defendant himself testified that he was promised that if he made the statement the officers would turn him loose, but this simply presented a question of fact for the trial judge.

Also it is in the record that defendant is uneducated beyond the third grade and it is contended that we should conclude that he did not completely understand the consequences of the statement he made. However, he admitted that he had previously been convicted of a felony and consequently knew something of court proceedings. There is nothing in the record to indicate that he did not understand the officers when they in-

formed him that the statement might be used against him. The court did not err in receiving the evidence in question.

The next point raised by defendant is that the court erred in not instructing the jury concerning the circumstances under which a confession is voluntary or involuntary. There was no request made by defendant for an instruction on the matter now complained of. It is the rule in this state that no cause shall be reversed and a new trial ordered by the district court or by this court for any errors in instructions which were not specifically pointed out and excepted to at the settlement of the instructions. R.C.M. 1947, section 94-7201.

We have considered all the points raised by counsel for defendant but fail to see any merit to any of the contentions. The judgment and order are therefore affirmed.

MR. CHIEF JUSTICE ADAIR; MR. JUSTICES ANDERSON, DAVIS, and BOTTOMLY, concur.