No. 12893

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

GARY EUGENE RADI,

Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable C. B. Sande, Judge presiding.

Counsel of Record:

For Appellant:

Robert L. Stephens, Jr. argued, Billings, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz, Assistant Attorney General, argued,
Helena, Montana
Arthur Ayers, County Attorney, argued, Red Lodge,
Montana

---

Submitted: September 25, 1975

Decided: NOV 25 1975

Filed: NOV 25 1975

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the district court, Carbon County. Gary Eugene Radi appeals from a June 25, 1974, jury verdict finding him guilty of attempted burglary, pursuant to sections 94-4-103, and 94-6-203, R.C.M. 1947.

From appellant's point of view, the record presents this factual setting: In early March 1974, Radi and several others including John Miner, were in attendance at a local night spot in Billings, Montana. Sometime during the course of the evening, they were introduced to a man called "Pat" who mentioned that he was from Red Lodge and lived in an apartment just above a Safeway store. Radi purchased a round of drinks for those at his table, and several witnesses testified that he paid for the drinks with a one hundred dollar bill. The waitress took the bill and later returned with the change. She observed that several of those present, including Radi, had left the table to dance. She placed both the drinks and the change on the table. Upon Radi's return he discovered that his change and the man "Pat" had disappeared.

Approximately ten days later, Radi invited John Miner and one Daniel Cinnamon to accompany him to Red Lodge in an attempt to locate this "Pat" and recover the money. It is at this point that appellant's story begins to conflict with the official police version.

Police suspicions were first aroused on that evening, when they observed tracks in the freshly fallen snow, in an alley behind the B & P Hardware store in Red Lodge. The tracks led to the back door of the store, stopped, and continued up the alley. The police followed the tracks to the rear of a neighboring Safeway store, where they spotted Radi and Miner in the general area of some abandoned

apartments located above the store. The two men were ordered downstairs and asked to stand against the building. Radi suddenly ran down the alley, but was later apprehended several blocks away. During his run, an object fell from his person which later was identified as a .22 caliber pistol. A search of Miner resulted in the recovery of a twelve-inch crowbar carried up the sleeve of his coat. The third participant, Cinnamon, was apparently standing in the front stairway to the apartments and was later apprehended at a nearby motel. The police established that the crowbar found on Miner was very similar to the one which had been used in an attempt to burgle the B & P Hardware store. All three were arrested and charged with aggravated burglary. The charges against Miner and Cinnamon were later dropped and the charge against Radi was reduced to attempted burglary.

At trial appellant attempted to explain that his presence in the alley on the evening of March 17, 1974, was only for the purpose of locating "Pat" in the hope of recovering his money. The Carbon County jury refused to accept this story and its adverse verdict engendered this multi-issue appeal.

At trial appellant consistently denied any intent to commit the offense. On appeal he first contends that the evidence was insufficient to support his conviction and sustain a finding of criminal intent.

In Montana, a person commits the offense of burglary if he "knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein." Section 94-6-204, R.C.M. 1947. The charge of attempted burglary will lie where a person has done any act toward the commission of the burglary if the requisite specific purpose can also be established. Section 94-4-103(1), R.C.M. 1947. The Montana "attempt" statute is somewhat unique in that it expressly provides for a complete defense under circumstances where an abandonment of criminal purpose can be established. Section 94-4-103(4), R.C.M. 1947, provides:

"A person shall not be liable under this section, if under circumstances manifesting a voluntary and complete renunciation of his criminal purpose, he avoided the commission of the offense attempted by abandoning his criminal effort."

Appellant suggests that only two possible inferences could be drawn from the record as a matter of law: 1) That there was a complete renunciation and abandonment of the attempt to commit any offense; and 2) that if guilty at all, appellant could have committed no crime more serious than a criminal trespass under section 94-6-203, R.C.M. 1947. In support of his contention appellant emphasizes he was never seen attempting to enter the store, that in fact the store was never entered and that he was apprehended two buildings away. Appellant refers us to the uncontroverted fact the tracks followed by the police could only have been made at a walking pace and his "activity" at the hardware store was not interrupted by the police, but abandoned voluntarily.

We agree the aforementioned factors give rise to the possible inference of a voluntary abandonment. But, we do not find that they constitute conclusive evidence of abandonment as a matter of law. The record is sufficient to demonstrate an entry into the B & P Hardware store had been attempted through the use of a crowbar on the back door. Footprints in the snow demonstrated that several individuals had entered the alley and approached the door. The arresting officers followed these footprints in the alley to the place where appellant and his associate were apprehended. Finally we consider the crowbar which was seized from John Miner. It can hardly be said that under these circumstances a conclusion of voluntary abandonment is mandated as a matter of law. Section 94-4-103(2), R.C.M. 1947, states:

"It shall not be a defense to a charge of attempt that because of a misapprehension of the circumstances it would have been impossible for the accused to commit the offense attempted."

In the instant case the jury might have reasonably concluded the burglary was terminated because the participants found their efforts to be futile or for any number of reasons other than voluntary abandonment.

This Court has often stated the jury is the sole judge of the weight to be accorded the testimony and that where substantial evidence exists to support its determination, it will stand. State v. Merseal, _____Mont._____, 538 P.2d 1366, 32 St.Rep. 823; State v. Gleim, 17 Mont. 17, 29, 41 P. 998; State v. White, 146 Mont. 226, 405 P.2d 761; State v. Stoddard, 147 Mont. 402,408, 412 P.2d 827. The record before us substantially supports that which the jury chose to believe, and we decline to disturb its findings on appeal.

Appellant next contends the district court erred by failing to instruct the jury on the offense of criminal trespass, which he terms a lesser included offense. At the outset, we note the probable issue of whether the offense of criminal trespass may in fact be considered a lesser included offense of burglary. But we need not reach that issue.

It is argued appellant never offered this instruction at the trial level and therefore this issue is raised for the first time on appeal. Generally, this Court will refuse to rule on issues which were not presented to the district court and this rule is especially applicable to the instant case. The Montana Code of Criminal Procedure, section 95-1910(d), R.C.M. 1947, provides in pertinent part:

> "When the evidence is concluded, if either party desires special instructions to be given to the jury, such instructions shall be reduced to writing, numbered, and signed by the party, or his attorney, and delivered to the court."

The statute is written in mandatory language and therefore should be construed as such. State v. Cook, 42 Mont. 329, 112 P. 537; State v. Dougherty, 71 Mont. 265, 229 P. 735; State v. Sawyer, 71 Mont.

269, 229 P. 734; State v. Donges, 126 Mont. 341, 251 P.2d 254; State v. Maciel, 130 Mont. 569, 305 P.2d 335.

The next issue raised by appellant concerns a request to exclude prospective witnesses from the courtroom. The court granted this motion, but exempted, sua sponte, the officers from the Red Lodge police department. The net effect of this action was to exclude all the defense witnesses and none of the prosecution witnesses. Appellant now contends the district court committed prejudicial error in exempting the prosecution witnesses.

Section 93-1901-2, R.C.M. 1947, states:

"Witnesses not under examination may be excluded. If either party requires it, the judge may exclude from the courtroom any witness of the adverse party, not at that time under examination, so that he may not hear the testimony of other witnesses."

Although section 93-1901-2 was enacted under Montana's civil code, it has long been held to apply to criminal trials also. State v. McDonald, 51 Mont. 1, 149 P. 279.

The motion to sequester or exclude witnesses not currently under examination from the courtroom is not granted as a matter of right, but is addressed to the sound discretion of the trial court. The motion may be granted when such action is necessary to insure the spontaneity and reliability of the witnesses by limiting their opportunity to be influenced by each other's testimony. See Anno. 32 ALR2d 358-361; 23 C.J.S. Criminal Law, § 1010, pp. 1072,1073.

We cite with approval the language in State v. McLeod, 131 Mont. 478, 492, 311 P.2d 400, to the effect section 93-1901-2 is a "salutary provision, especially in felony cases in the aid of a fair trial to which every defendant is entitled." McLeod also clearly states that the action of the trial judge cannot be disturbed on appeal absent a showing of manifest abuse of discretion and prejudice.

In Montana, certain types of witnesses have traditionally been exempted from the operation of the witness exclusionary rule, including attorneys of the court, court officers who happen to be witnesses and whose attendance in the courtroom is necessary, and police officers assisting in preparation of the prosecution's case. State v. Walsh, 72 Mont. 110, 232 P. 194; State v. Fitzpatrick, 149 Mont. 400, 427 P.2d 300. The trial court, by incorporating one of these exceptions into its ruling, was correctly following the law of this state and therefore did not err. State v. Meidinger, 160 Mont. 310, 320, 502 P.2d 58; State v. Love, 151 Mont. 190, 440 P.2d 275. While the record here evidences no prejudicial harm, we direct in the future where the trial judge grants a motion to sequester, that in the spirit of fairness, all witnesses who are to testify be excluded from the courtroom.

Appellant's fourth specification of error refers this Court to the denial by the trial court of his motion for mistrial, a motion precipitated by a rather unusual chain of events.

Appellant alleges that the defense witness Daniel Cinnamon was arrested at or just outside the courtroom door, to appellant's prejudice. The evidence as to the exact place of arrest is in conflict, as is whether any of the jurors knew what went on. The trial judge did not observe what took place, and when appellant's counsel made an issue of what happened, he allowed argument and then ruled there was "no prejudice". We find no error.

In State v. Bentley, 155 Mont. 383, 405,406, 472 P.2d 864, this Court stated:

> "This Court will not reverse a decision of the trial court unless prejudice is shown, and such prejudice will not be presumed but must be affirmatively shown. State v. Love, 151 Mont. 190, 440 P.2d 275; State v. Walker, 148 Mont. 216, 419 P.2d 300; State v. Heiser, 146 Mont. 413, 407 P.2d 370."

Next appellant takes issue with what he characterizes as "certain opinion evidence" given by the police officers as to the

crowbar and the marks found in the door of the hardware store. We find no error. State v. Collins, 88 Mont. 514, 294 P. 957.

Two evidentiary issues remain for consideration, Appellant alleges that the admission of the weapon and ammunition clip, which fell to the ground during his attempted escape from custody, was improper and prejudicial when offered for the purpose of allowing the jurors to infer criminal intent therefrom. Appellant's contention cannot be sustained under the pertinent Montana case law, especially under the facts presented by this case.

The judgment of the district court is affirmed.

_____
Justice


We concur:

- - - - - - - - - - - - - - - - - - - - - - - - - - - -
Chief Justice

_____

_____

_____
Justices .